# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| TEXAS LIFE INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | NO. CIV-15-0418-HE |
| | ) | |
| AMANDA RAPER, f/k/a Amanda R. Nickell, *et al.,* | ) ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Plaintiff Texas Life Insurance Company ("Texas Life") filed this declaratory judgment action against Amanda Raper a/k/a Amanda R. Nickell and Dana Clifton, as legal guardian for the Estate of GFN, seeking a declaration regarding the proper beneficiary of a life insurance policy it issued Christopher Nickell. Texas Life also seeks a declaration that the Citizen Potawatomi Nation Court does not have personal jurisdiction over it or subject matter jurisdiction over the dispute between it and defendant Raper. Defendant Raper has filed a motion to dismiss on the ground that a virtually identical action is pending in the District Court of the Citizen Potawatomi Nation.

### Background

The facts underlying the dispute are not contested.[1] Christopher Nickell, a non-Indian, purchased a $100,000 life insurance policy from Texas Life in March 2010, while he was employed at the Gordon-Cooper Technology Center in Shawnee, Oklahoma. He married defendant Amanda Raper, a Cherokee Indian, in July 2012. In April 2013, Nickell

---

[1]*The facts are taken from the complaint and the parties' briefs.*

designated Ms. Raper as the primary beneficiary of the insurance policy and GFN, his minor child, as the secondary beneficiary. Ms. Raper and Nickell were divorced on December 31, 2013. The divorce decree was issued by the District Court for the Citizen Potawatomi Nation.² Nickell died on April 1, 2014, and both Ms. Raper and defendant Clifton, GFN's legal guardian, submitted claims to Texas Life for the policy benefits. On May 28, 2014, Texas Life tendered $100,000 to Ms. Clifton, as GFN's guardian, relying on §7.17 of the policy, which it asserts provides that the insurance contract is governed by Oklahoma law, and 15 Okla. Stat. § 178, which it asserts provides that Ms. Raper's designation as the policy beneficiary was revoked when Nickell died after their divorce. Ms. Raper then sued Texas Life in the District Court for the Citizen Potawatomi Nation, alleging she is entitled to the life insurance benefits and seeking judgment in the amount of $100,000. She alleges in her petition in that case that "nothing in the Potawatomi Nation's statutes provide for revocation [upon the insured's death] of the insurance company contract." Doc. #1-7, p. 3.

Ms. Raper argues that the "case turns on whether, or not, the Divorce Decree in Potawatomi Tribal court voided the beneficiary designation by Nickell in the insurance

---

²*In her motion to dismiss, Ms. Raper states that "utilizing her Cherokee Indian heritage, [she] filed for divorce in the Citizen Potawatomi Nation Trial Court; Nickell consented to the jurisdiction of the Potawatomi Nation Tribal Court." Doc. #14, p. 2. However, Ms. Raper is listed in the caption as the <u>defendant</u> in the divorce action." Doc. #1-3, p. 2. The divorce decree states that it was the defendant, i.e. Ms. Raper, who "submitted to the Court's jurisdiction through execution of an Entry of Appearance and Waiver." Id. See generally <u>Oxendine v. Kaplan</u>, 241 F.3d 1272, 1275 (10th Cir. 2001) ("[I]n deciding a motion to dismiss pursuant to Rule 12(b)(6), a court may look both to the complaint itself and to any documents attached as exhibits to the complaint."); see also Fed.R.Civ.P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part thereof for all purposes").*

2

policy sold to Nickell via solicitation at Gordon Cooper Vo-Tech." Doc. #14, p. 3. She contends the Tribal Court can interpret its own decree and determine if it is affected by the Oklahoma statute. The court does not disagree. However, the question is whether the Tribal Court has jurisdiction over the dispute and Texas Life and should be given the opportunity to determine the extent of its jurisdiction as required by the tribal exhaustion rule. Texas Life claims the Tribal Court lacks jurisdiction to resolve the policy dispute because "the Policy has no relation whatsoever to the tribal sovereignty of the Citizen Potawatomi Nation." Doc. #16, p. 4. It argues that none of the parties to this action, and neither party to the insurance contact – Texas Life or Nickell – are (were) members of the citizen Potawatomi Nation, none of the conduct pertaining to the policy occurred on tribal property and the contracting parties agreed that the policy would be governed by Oklahoma law.

## Analysis

"The tribal exhaustion rule provides that, absent exceptional circumstances, federal courts typically 'should abstain from hearing cases that challenge tribal court jurisdiction until tribal court remedies, including tribal appellate review, are exhausted.'" Crowe & Dunlevy, P.C. v. Stidham, 640 F.3d 1140, 1149 (10th Cir. 2011) (quoting Bank of Okla. v. Muscogee (Creek) Nation, 972 F.2d 1166, 1170 (10th Cir.1992)). However, because it is "a prudential rule based on comity, the exhaustion rule is not without exception." Id. at 1150. "Relevant here, exhaustion is not required if it is 'clear that the tribal court lacks jurisdiction,' such that 'the exhaustion requirement would serve no purpose other than delay.'" Id. (quoting Burrell v. Armijo, 456 F.3d 1159, 1168 (10th Cir.2006)).

3

Ms. Raper cites the Citizen Potawatomi Nation Code of laws, which provides that its courts "shall have general civil jurisdiction over all general civil claims which arise within the tribal jurisdiction." Doc. #14, p. 2. As Texas Life notes in its response, she appears to claim that the jurisdiction of the Citizen Potawatomi Nation and its Tribal Courts is coextensive with the boundaries of Potawatomi County. *See id. pp. 2-3;* Raper's Answer, Doc. #15, pp. 2-3. However, she offers no support for this assertion and ignores the well-established limits that have been placed on the ability of Indian tribes to exercise jurisdiction over nontribal members.

Under <u>Montana v. United States</u>, 450 U.S. 544, 564–65 (1981), and its progeny, "[t]here is a presumption against tribal civil jurisdiction over non-Indians."[3] <u>Crowe</u>, 640 F.3d at 1150. Two exceptions exist to <u>Montana</u>'s general rule against a tribal court exercising jurisdiction over nontribal members. *Id.* "[A] tribe may regulate 'activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other agreements.'" *Id.* (quoting <u>Montana</u>, 450 U.S. at 565). A tribe also may exercise authority over nonmember conduct on Indian land "where 'the conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe.'" *Id.* at 1150-51 (quoting <u>Montana</u>, 450 U.S. at 566);

---

[3]*Courts use the terms non-Indian and non-member interchangeably. "[W]hile the tribes have authority to exercise civil jurisdiction over their own members, exercise of tribal power beyond what is necessary to protect tribal self-government or to control internal relations is inconsistent with the dependent status of the tribes, and so cannot survive without express congressional delegation. Generally, therefore, the inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe." <u>Crowe</u>, 640 F.3d at 1150 (internal citation and quotation marks omitted).*

4

Thlopthlocco Tribal Town v. Stidham, 762 F.3d 1226, 1234 (10th Cir. 2014) ("The inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe – with two exceptions: the activities of nonmembers who enter into consensual relationships with the tribe and the activities of nonmembers that take place on Indian land. ") (internal quotation marks omitted).

Neither exception applies here. Texas Life sold a life insurance policy to Nickell, who was not a member of the Citizen Potawatomi Nation. The policy was solicited and executed at a state vocational-technical school located in a municipality (the city of Shawnee). A dispute now exists regarding that contract between nontribal members.[4]

The first Montana exception does not support the exercise of tribal court jurisdiction over Texas Life, as it did not enter into a "consensual relationship" with the Citizen Potawatomi Nation or any tribal member. The second Montana exception, which is "narrow," also does not apply. Crowe, 540 F.3d at 1153. "To support jurisdiction under this exception, the conduct must 'imperil the subsistence of the tribal community.'" *Id.* (quoting Plains Commerce Bank v. Long Family Land & Cattle Co., 554 U.S. 316, 329–30 (2008)). Texas Life's issuance of a life insurance policy to a nonmember and its subsequent payment of the policy proceeds to one of two policy beneficiaries, neither of whom is a member of the Citizen Potawatomi Nation, does not threaten the tribe.

The fact that the Tribal Court issued a divorce decree to Nickell, which may affect the

---

[4]*Ms. Raper is a member of the Cherokee tribe.*

interpretation of the insurance policy, also does not give the Tribal Court jurisdiction over Texas Life in a later policy dispute or over the policy dispute itself. As Texas Life points out, the entry of a divorce decree by a court does not give it jurisdiction over "all matters tangentially related" to that decree. Doc. #16, p. 11. The cases plaintiff cites do not counsel otherwise. One, <u>Thoendel v. Holland</u>, 663 F.Supp. 77 (W.D.Okla. 1987), is inapposite. In it the court had to determine whether a claim was separate and independent for removal purposes under 28 U.S.C. § 1441(c). The other, <u>U. S. ex rel. Rollingson v. Blackfeet Tribal Court of Blackfeet Indian Reservation</u>, 244 F. Supp. 474 (D. Mont. 1965), is distinguishable. It involved matters arising out of a lease between a corporation <u>and</u> a tribe and was concerned with " internal affairs of the tribe" that could "be determined solely in the tribal court." <u>Rollingson</u>, 244 F.Supp. at 478.

    Ms. Raper has offered no compelling argument establishing that the Tribal Court has personal jurisdiction over Texas Life or subject matter jurisdiction over the dispute. "Tribal courts are . . . not courts of general jurisdiction." <u>Crowe</u>, 640 F.3d at 1150. As the District Court for the Citizen Potawatomi Nation plainly lacks both personal and subject matter jurisdiction, "the exhaustion requirement would serve no purpose, and there is no need to require further tribal court litigation before the exercise of federal jurisdiction in this case." <u>Crowe</u>, 640 F.3d at 1153.

Accordingly, defendant Raper's motion to dismiss [Doc. #14] is **DENIED**.

**IT IS SO ORDERED**.

Dated this 24th day of August, 2015.

JOE HEATON
UNITED STATES DISTRICT JUDGE